# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## AT DETROIT

ROY D. TAYLOR,

                Petitioner,      :      Case No. 2:19-cv-12256

  - vs -                            District Judge Walter H. Rice
                                        Magistrate Judge Michael R. Merz
                                        (both by assignment)

KEVIN LINDSEY, Warden,
  State Prison of Eastern Michigan,

                                        :

                Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case under 28 U.S.C. § 2254 is before the Court on Respondent's Motion to Dismiss the Petition as barred by the statute of limitations (ECF No. 13). Petitioner, who is appearing through appointed counsel, opposes the Motion (ECF No. 20). Under Local Rule 7.1(e)(1), Respondent was due to file a reply brief not later than fourteen days after the memorandum in opposition or in this instance no later than April 8, 2020, but no reply has been filed. The Court's Administrative Order dealing with the current COVID-19 pandemic provides in pertinent part "This order does not affect the Court's consideration of civil or criminal motions that can be resolved without oral argument or handled by telephone or video conference" (20-AO-021). Thus the Motion to Dismiss is ripe for decision.

This case was assigned to United States District Judge Walter Rice by Chief Circuit Judge R. Guy Cole, Jr., on September 26, 2019 (ECF No. 10). The next day the undersigned was designated to hold court in the Eastern District of Michigan (ECF No. 11) and Judge Rice referred

1

all pre-trial matters in the case, whether or not dispositive, to the undersigned (ECF No. 12). A motion to dismiss involuntarily is a dispositive matter by statute, 28 U.S.C. § 636(b)(1)(B), requiring a report and recommended disposition.

**Litigation History**

Petitioner Taylor shot and killed Russell Harrington during an armed robbery for drugs and money. He was convicted by a jury of first-degree felony murder in violation of Mich. Comp. Laws § 750.316(b) and of possessing a firearm while committing a felony, Mich. Comp. Laws § 750.227b[1], and sentenced on May 8, 1998, to life imprisonment without the possibility of parole on the murder conviction and an additional two years on the firearm conviction. He appealed to the Michigan Court of Appeals which affirmed. *People v. Taylor*, No. 213412, 2000 WL 33417336, at *2 (Mich. Ct. App. June 30, 2000). Taylor then filed an application for leave to appeal in the Michigan Supreme Court which that court denied March 27, 2001. *People v. Taylor*, 624 N.W.2d 195 (Mich. 2001) (unpublished table decision). His conviction thus became final on direct appeal ninety days later, on June 25, 2001, when his opportunity to seek certiorari review by the United States Supreme Court expired. Therefore unless tolled under some provision of law, statutory or decisional, Taylor's time to file in this Court expired one year later, June 26, 2002. He did not file his Petition in this Court until the day he signed it, July 29, 2019, more than seventeen years later.

Respondent's argument that the Petition is time-barred is straightforward: Taylor has not claimed any statutory tolling period under 28 U.S.C. § 2244 and his later filings for collateral relief

---

[1] A third conviction for armed robbery was vacated as violating Taylor's rights under the Double Jeopardy Clause.

2

do not restart the statutory period (Motion, ECF No. 13, PageID 85-87. And the Petition, which was filed *pro se*, makes no showing of an entitlement to equitable tolling. *Id.* at PageID 87-92.

Petitioner, in the first substantive filing by appointed counsel[2], asserts the Petition should not be dismissed on limitations grounds because

> (1) there is new evidence about the reliability of Taylor['s] "confession" that could convince a reasonable juror of his innocence;
> (2) Taylor is entitled to equitable tolling;
> (3) the state court did not adjudicate the unlawful-arrest claim, so an evidentiary hearing is needed; and
> (4) the transcripts of his trial are unavailable, which requires an evidentiary hearing.

(Response, ECF No. 20, PageID 1189.) These bases for continuing the litigation are examined in turn.

**New Evidence of Actual Innocence**

As new evidence of his actual innocence, Taylor relies on (1) the Detroit Police Department's misconduct during the time of his arrest which was discovered after trial and "fits the pattern" in this case; (2) new studies which show there is a strong likelihood that Taylor's confession was false; (3) Taylor's medical records reveal personality disorder, rendering him particularly susceptible to confessing falsely.

---

[2] The Petition was filed *pro se*. Thereafter, but before the case was reassigned to Judge Rice, Judge Arthur Tarnow of this Court appointed the Public Defender as counsel on Petitioner's Motion (ECF Nos. 3 and 6).

3

**Detroit Police Misconduct**

Taylor summarizes the new evidence of Detroit Police Misconduct as follows:

> At the time of Taylor's arrest, DPD had a widespread unconstitutional practice of making dragnet arrests to question multiple people about suspected homicides. DPD arrested people for murder at an extraordinary rate, locking up roughly three people for every murder case in the city. (Ex. 7, Letter re DPD Witness Detention, at 3.) Taylor's detention and interrogation fit this pattern.
>
> This unconstitutional practice was revealed only after Taylor had been convicted. The revelation came through two lawsuits resulting in consent judgments. The U.S. Department of Justice conducted an in-depth investigation that revealed DPD's pattern and practice of scattershot arrests without probable cause. (Ex. 6, Compl. ¶ 7; Ex. 7, Letter re DPD Witness Detention, at 3.) The lawsuit and ensuing judgment required federal oversight of DPD from 2003 to 2014. *See United States v. City of Detroit*, et al., No. 03-72258, Consent J., Dkt. 22 (E.D. Mich. July 18, 2003) & Order Terminating Consent J., Dkt. 731 (E.D. Mich. Aug. 25, 2014).
>
> The second consent judgment arose from a private lawsuit. DPD officers coerced Eddie Lloyd, a mentally ill man, to falsely confess to murder. The interrogating officers fed him the details necessary to make the confession stick. *See* Ex. 5, Brandon L. Garrett, *False Confessions*, LITIGATION, Summer 2011, at 54, 54–55. Thanks to DNA evidence Lloyd was exonerated, and an ensuing lawsuit resulted in a consent decree requiring DPD to videotape all interrogations when the crime under investigation carries a possible penalty of life without parole. *Id.* at 58.

(Response, ECF No. 20, PageID 1190-91.)

Exhibit 6 is the Complaint in *United States v. City of Detroit*, Case No. 03-72258, filed June 12, 2003. Par. 7 of that Complaint, the portion referenced by Taylor's counsel, reads

> 7. The defendants, through their acts or omissions, have engaged in and continue to engage in a pattern or practice of conduct by DPD officers of falsely arresting persons and improperly seizing persons in Detroit.

4

(Response, ECF No. 20, Ex. 6, PageID 1238.) Exhibit 7 is a June 5, 2002, nine-page letter from Steven H. Rosenbaum, Chief of the Special Litigation Section of the Department of Justice, to Ruth Carter, Corporation Counsel for the City of Detroit, describing many policies and practices of the Detroit Police which the United States believed should be changed.

With respect, both of these documents contain general allegations, not evidence. They certainly post-date Taylor's trial, but make no reference to him personally or to his case. The Court has only counsel's assertion that Taylor's case "fits the pattern."

The second paragraph of the "new evidence of police misconduct" refers to the Detroit false confession case of Eddie Lloyd as explained by Professor Brandon Garrett. Garrett is well-known for his pioneering work Convicting the Innocent for which he examined in great detail the first 250 DNA exonerations to attempt to determine what caused the convictions of 250 people who were proven to be innocent.

The undersigned has the greatest respect for Assistant Attorney General Rosenbaum's work on police reform, having served as the settlement special master in the Cincinnati Racial Profiling case at the same time as the Detroit case was being litigated. And Professor Garrett's work is grounded generally in very sound science. And the work behind the Complaint and that done in the Lloyd case is both after Taylor's conviction and possibly relevant, but the relevance is very general. That is to say, they have nothing specific to say about whether Taylor murdered Harrington.

**False Confession Studies**

Taylor also relies on psychological research published since his trial which documents the phenomenon of false confessions. For example, Garrett reported that of the first 252 DNA-related exonerations, forty-two of those people exonerated by later DNA testing had falsely confessed. Brandon L. Garrett, *The Substance of False Confessions*, 62 STAN. L. REV. 1051, 1052-53 (2010). He says this has led to a new awareness "that innocent people falsely confess, often due to psychological pressure placed upon them during police interrogations." *See also* Kiera Janzen, *Coerced Fate: How Negotiation Models Lead to False Confessions*, 109 J. CRIM. L. & CRIMINOLOGY 71, 75 (2019), and Richard A. Leo, *False Confessions: Causes, Consequences, and Implications*, 37 J. AM. ACAD. PSYCHIATRY LAW 332, 335 (2009), cited by Petitioner.

Note that Garrett's work, which is invaluable in general, only deals with persons who have been proven innocent by DNA evidence. It cannot logically leads to a conclusion of how many false confessions there are among those convicted but not exonerated by DNA. It certainly rebuts Dean Wigmore's observation, quoted by Garrett, that false confessions are virtually impossible. But it does not offer a way to prove that a particular confession is false except if DNA testing is possible. No one has suggested that DNA testing in thie case, if it were possible, would exonerate Taylor.

**Taylor's Medical Records**

As the final category of new evidence on which he relies, Taylor cites "Medical records recently obtained from MDOC show that, since at least 2008, Taylor has been diagnosed with Axis

II personality disorder not otherwise specified (NOS). Ex. 10, Mental Health Evaluation." (Response, ECF No. 20, PageID 1205.)

What is presented is a single Initial Screening Report[3] dated November 2008[4] which counsel then connects to two pieces of general psychological literature which claim that persons with "personality disorder" are more susceptible than the general population to making false confessions (Response, ECF No. 20, PageID 1205-06, citing AXIS II, Litigating The Sexual Harassment Case § 20.IV.B; Gisli H. Gudjonsson, The Psychology Of Interrogations And Confessions: A Handbook at 560 (2003). Counsel does not quote a sufficient portion of the context from which quotations are taken to tell whether this relates to personality disorder NOS or one of the dozens of more specific personality disorders. Upon examining the pinpoint citation in the Gudjonsson text, the Magistrate Judge found no reference to examination of the person whose case was being reported as every having been diagnosed with a "personality disorder" under the Diagnostic and Statistical Manual.

**Evaluation**

All of the evidence adverted to is "new" in the sense that it came into existence after Taylor's conviction. But with the exception of the single piece of cursory psychological evidence, none of it relates to Taylor individually or his case. Surely this is not what the Supreme Court meant by "new evidence of actual innocence" in *Schlup v. Delo,* 513 U.S. 298, 316 (1995).

In *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the Sixth Circuit held

---

[3] This document might more appropriately be labeled an initial impression, rather than "psychological evaluation," the label given it in the Response.
[4] To convert one report in November 2008 to "at least since 2008" exemplifies the distressing tendency of exaggeration of evidence in legal rhetoric.

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005). To put the analysis in terms the Supreme Court used, if this generic evidence about false confessions is sufficient to bypass the statute of limitations, then that statute no longer has any meaning. Garrett found the most prevalent cause of wrongful conviction among the exonerations he studied was bad eyewitness testimony. Does that imply that every person convicted on eyewitness testimony before Garrett published can now bring a habeas petition, no matter how long ago the conviction occurred?

Taylor relies on four cases to show his new evidence is sufficient. In *Lisker v. Knowles*, 463 F. Supp. 2d 1008 (C.D. Cal. 2006), the court listened to many days of testimony and received dozens of exhibits, all of them relating specifically to Lisker's case, including the testimony of a crime scene reconstruction expert to whom Taylor refers.

In *Reeves v. Sci*, 897 F. 3d 154 (3rd Cir. 2018), there were multiple pieces of evidence implicating another person which trial counsel failed to present. The principal question before the

8

Third Circuit was whether "new evidence" could include newly-presented evidence and not just newly-discovered evidence; it came down on the side of "newly-presented" and remanded for determination of whether the evidence was reliable. However, the alternative suspect evidence all related to the particular crime in suit and not the general phenomenon of alternative suspects.

In *Floyd v. Vannoy*, 894 F.3d 143 (5th Cir. 2018), the court wrote:

> In 2006, 23 years after his conviction was affirmed by the Supreme Court of Louisiana, the Innocence Project of New Orleans (IPNO) assisted Floyd in filing his first state-court application for post-conviction relief. It was supported by newly-discovered evidence, including: pre-trial fingerprint-comparison results from the Hines scene marked "NOT JOHN FLOYD" and "NOT VICTIM"; pre-trial fingerprint-comparison results from the Robinson scene listed "NOT DAVID HENNESSEY", "NOT VICTIM", and "NOT JOHN FLOYD"; post-trial DNA-test results from hair discovered at that scene; Clegg's post-trial affidavit, stating Detective Dillmann misrepresented Clegg's pre-trial statement that Hines had a distinct sexual preference for black males (the Clegg statement); Detective Dillmann's post-conviction statements, including the statement in his 1989 book, Blood Warning: The True Story of the New Orleans Slasher, that he showed Floyd "two of the grisliest shots" in an attempt to "crack him"; evidence of the detective's subsequent mistreatment of suspects; and Floyd's I.Q. score of 59, discovered through tests not existing at the time of trial.

893 F.3d at 152. All of this new evidence is particular to Floyd's case, including even the published admission of Detective Dillmann of use of interrogation techniques the Fifth Circuit majority found improper.

Taylor asserts the most apposite case is *Bryant v. Thomas*, 725 F. App'x 72 (2d Cir. 2018). The Second Circuit found

> Bryant presented (i) serological evidence indicating that his blood type does not match the semen found at the scene of the crime, along with expert testimony excluding Bryant as the source of the semen, (ii) an affidavit from the only trial eye witness to connect Bryant to the victim on the day of the murder, averring that at the time of the trial, when the witness was ten years old, he gave false testimony after being pressured by the police, and that, in truth, Bryant was not

9

>     in the area when the witness last saw the victim, and (iii) an affidavit
>     from a social psychologist discussing various factors— his low IQ,
>     his young developmental age, and the length of interrogation—
>     which may have contributed to a false confession by Bryant the day
>     after the murder.

725 Fed. Appx. at 73-74. Here again the new evidence is all particular to Bryant's case. The expert psychological opinion references the length of Bryant's interrogation. Taylor relies on the length of his own interrogation, but that historical fact is not newly-discovered or newly-presented,

Each of these appellate decisions applied the correct standard for evaluating new evidence: is it such that no rational juror would have convicted if it had been presented?[5] Taylor's new evidence simply does not rise to that level.

**Equitable Tolling**

Apart from the new evidence, Taylor asserts he is entitled to equitable tolling of the statute of limitations because (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. (Response, ECF No. 20, PageID 1207, quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010), quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Taylor asserts his conviction became final in 2001 and "sometime before January 2003" he began to seek records to permit him to litigate his claims (Response, ECF No. 20, PageID 1208). Then in mid-2003 he filed a state habeas petition. Because neither the courts nor the prosecutor

---

[5] Taylor suggests the standard is whether his new evidence "could convince a reasonable juror of his innocence." (Response, ECF No. 20, PageID 1189.) As all four decisions reflect, the *Schlup* standard is whether, in light of the new evidence, no rational juror could find guilt beyond a treasonable doubt.

responded to his petition, "the entire time between [his] 2006 petition and his 2015 motion for relief should be tolled." *Id.* "The Michigan Supreme Court resolved his 6.500 appeal in May 2018, and the time to petition the U.S. Supreme Court expired in August 2018, less than a year before his federal petition." *Id.*

*Pro se* status and limited law library access are insufficient to ground equitable tolling. *Hall v. Warden*, 662 F.3d 745, 751-52 (6th Cir. 2011). Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. *Jurado v. Burt*, 337 F.3d 638 (6th Cir. 2003), *citing Graham Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Id.* at 561. Equitable tolling should be granted sparingly. *Solomon v. United States*, 467 F.3d 928, 033 (6th Cir. 2006).

As noted above, Taylor's conviction became final June 25, 2001. Thus by his own admission, he did nothing to pursue his asserted rights until after the statute expired one year later. Beyond that, the claim to equitable tolling from 2006 to 2015 without any showing of what Taylor did in that time, as opposed to what state authorities did not do, is unpersuasive.

**An Evidentiary Hearing is Needed on the Unlawful Arrest Claim**

Taylor asserts that because the Michigan courts did not adjudicate his false arrest claim on the merits, he is entitled to *de novo* consideration of that claim in this Court (Response, ECF No. 20, PageID 1210, citing *Campbell v. Bradshaw*, 674 F.3d 578, 596 (6th Cir. 2012), and *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011).

11

Neither of these cases suggests that a state court's failure to adjudicate a claim means that that claim is excepted from the statute of limitations. *Campbell*, which was assigned at the District Court level to both judicial officers now assigned to this case, did not have a statute of limitations issue.

**An Evidentiary Hearing Is Required Because the State Court Record is Incomplete**

Taylor asserts "an evidentiary hearing is appropriate when the petitioner is not to blame for the absence of a factual record for a claim." (Response, ECF No. 20, PageID 1212, citing *Register v. Thaler*, 681 F.3d 623, 627 (5th Cir. 2012); *Dalton v. Battaglia*, 402 F.3d 729 (7th Cir. 2005)).

Taylor was tried three times. While transcripts of the first two trials are now filed here, apparently neither party can provide a full transcript of the trial that resulted in conviction. That fact is in no way relevant to the statute of limitations issue. In this day of digital records, a problem with a missing transcript is unusual, at least in the undersigned's experience. But the fact that it can happen, and has in this case, is a reason supporting the statute of limitations: the older a case is, the more likely important information cannot be retrieved.

Moreover, Taylor does not begin to suggest what kind of evidentiary hearing would be called for -- a retrial in habeas court? An order for a retrial in state court?

**Conclusion**

Petitioner has not produced new evidence of his actual innocence of the type and quality called for by *Schlup* and *Souter*. Much less has he shown that he is entitled to equitable tolling of

the seventeen-plus years he waited to file after his conviction became final. His arguments about evidentiary hearings do not address the statute of limitations issue at all.

On the basis of this analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice as time-barred. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

May 9, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #