# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## AT DETROIT

ROY D. TAYLOR,

        Petitioner,     :    Case No. 2:19-cv-12256

- vs -    District Judge Walter H. Rice
    Magistrate Judge Michael R. Merz
    (both by assignment)

KEVIN LINDSEY, Warden,
  State Prison of Eastern Michigan,

              :

        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case under 28 U.S.C. § 2254 is before the Court on Respondent's Motion to Dismiss the Petition as barred by the statute of limitations (ECF No. 13). As the assigned Magistrate Judge, the undersigned filed a Report and Recommendations recommending that the Motion to Dismiss be granted (the "Report," ECF No. 21). Petitioner objected (ECF No. 22) and the Warden has replied to those Objections (ECF No. 24). Pursuant to Fed.R.Civ.P. 72(b)(3), District Judge Rice has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (ECF No. 23).

Taylor makes a general objection that dismissal of a habeas case under Rule 4 of the Rules Governing § 2254 Cases "[i]f it plainly appears" that "the petitioner is not entitled to relief." (Objections, ECF No. 22, PageID 1287.) But the Report does not recommend a dismissal under Rule 4, which is the rule that provides for initial screening of habeas corpus petitions before an answer is ordered. In this case, the Rule 4 analysis was done by Magistrate Judge R. Stephen

1

Whalen when the case was first filed. Judge Whalen concluded summary dismissal under Rule 4 was not appropriate and ordered a response to the Petition.

The Report in no way recommends a dismissal under Rule 4. Rather it recommends dismissal based on full litigation of the statute of limitations defense.

**Actual Innocence**

In response to the Motion to Dismiss, Petitioner presented evidence that had not been presented before and which he claimed proved he was actually innocent and therefore entitled to the actual innocence exception to the statute of limitations recognized in *McQuiggin v. Perkins*, 569 U.S. 383 (2013).

The Report analyzed each piece of proffered new evidence and found that, except for one document, it was all general evidence of Detroit police misconduct or the phenomenon of false confessions (Report, ECF No. 21, PageID 1264-71). The sole exception, the only new evidence that relates specifically to Taylor, is a 2008 Initial Screening Report which conveys the diagnostic impression of Paul Eyke, M.S., that Taylor has a DSM Axis II diagnosis of "Personality Disorder NOS" (not otherwise specified)(ECF No. 20, Ex. 10, PageID 1259-61).

The Report concluded that this was not the type of evidence called for by *Schlup v. Delo,* 513 U.S. 298 (1995), or *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), the controlling authority on what constitutes new evidence to prove actual innocence (Report, ECF No. 21, PageID 1268 *et seq*.).

In his Objections Taylor recites again for ten pages the litigation history of the case (ECF No. 22, PageID 1278-87) without objecting at any point to the statement of litigation history in the

Report.  Regarding the new evidence which supposedly proves Taylor's actual innocence, however, Taylor makes a number of objections to the Report's analysis.

First of all, he objects that new evidence used to prove actual innocence is not limited to evidence that relates only to the defendant whose case is in suit (ECF No. 22, PageID 1287-94). Basically, he argues that evidence about Detroit police misconduct and general evidence about false confessions is relevant because he was interrogated and confessed in circumstances which have been shown to produce false confessions.  He also notes that the first two juries that heard his confession were unable to reach a verdict.

The Magistrate Judge agrees this evidence is relevant to his claims, but again concludes it is insufficient to prove his actual innocence to the level of proof required by *Schlup* and *Souter*. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 327 (1995).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324.  The Court also counseled that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.  Taylor presents no new eyewitness accounts of the crime and no new physical evidence.  The scientific evidence he presents, though relevant, does not purport to prove that he did not commit the crime, as for example, new forensic evidence might.  Taylor concedes he has nothing like the DNA evidence available in the false confession cases Brandon Garrett has analyzed.  Taylor cites to no case in which remotely relevant evidence of the sort he presents here has been found sufficient to prove actual innocence.

The one piece of new evidence related specifically to himself that Taylor does present is an initial screening report prepared in November 2008 while he was serving time in solitary confinement in which Paul Eyke, M.S.,[1] recorded a diagnostic impression that Taylor has a DSM Axis II diagnosis of "Personality Disorder NOS" (not otherwise specified)(ECF No. 20, Ex. 10, PageID 1259-61). Eyke draws no expert conclusions from his observation which are relevant to this case. Taylor asks the Court to connect Eyke's impression of personality disorder NOS with cited general literature on false confessions that people with certain personality disorders are more likely to make false confessions than the general population. He relies on two sources to support this connection (Objections, ECF No. 22, PageID 1293, citing Saul M. Kassin et. al., *Police-Induced Confessions: Risk Factors and Recommendations*, 34 Law & Hum. Behav. 3, 21 (2010); *see also* Jason Scheff, *Disproving the "Just Pictures" Defense: Interrogative Use of the Polygraph to Investigate Contact Sexual Offenses Committed by Child Pornography Suspects*, 68 N.Y.U. Ann. Surv. Am. L. 603, 668 (2013) (explaining that "individuals with personality disorders . . . may be predisposed to making false admissions")).

Kassin cites only antisocial personality disorder as a disorder related to false confessions. 34 Law & Hum. Behav. at 21.

Scheff opines generally "that individuals with personality disorders, a group that includes many sex offenders, may be predisposed to making false admissions." The authority he cites, quoted in the footnote below,[2] does not differentiate what sorts of personality disorders lead to

---

[1] No aspersion on Mr. Eyke's professional qualifications is intended; he may be by experience better qualified to diagnose mental disorders than the Ph.D. psychologists or M.D. psychiatrists this Court is used to seeing give mental health evidence. But none of his qualifications beyond the fact of his Master of Science degree are disclosed to the Court.

[2] Note 524 states, "Little research has been conducted on the issue of false confessions, but two studies of prison inmates found that 12% had made false confessions to the police at some point in their lives. Lars Madsen & Daniel T. Wilcox, The Empirical Evidence for the Value of Post-Conviction Polygraph in the Treatment and Supervision of Sex Offenders, in The Use of the Polygraph in Assessing, Treating and Supervising Sex Offenders: A Practitioner's

4

false confession.

The Diagnostic and Statistical Manual V[3] defines personality disorder as follows: "A personality disorder is an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has an onset in adolescence or early adulthood, is stable over time, and leads to distress or impairment." *Id.* at 245. The DSM lists twelve different personality disorders. *Id.* at 246-47. Taylor's sources give no indication which personality disorders are likely to lead to false confessions. However, the DSM definition suggests strongly that a valid diagnosis of personality disorder cannot be made on one cursory screening.

Taylor presents not a single case in which new evidence as general or sparse as that which he presents here has been found sufficient to meet the *Schlup* criteria. The Magistrate Judge is simply not persuaded that, on the basis of this newly presented[4] evidence, no rational juror would have found Taylor guilty.

**Equitable Tolling**

Apart from the new evidence, Taylor asserts he is entitled to equitable tolling of the statute

---

Guide, *supra* note 29, at 49, 59. One 2004 study of 1050 students found that only 4% who had previously been interrogated by police claimed to have made false admissions to the police. *Id*. at 60."

[3] The DSM V is the standard psychiatric tool for classifying mental disorders.

[4] In the Sixth Circuit, newly presented evidence can satisfy the *Schlup* standard. *Clark v. Noble*, 2019 U.S. Dist. LEXIS 49689, at *49-50 (S.D. Ohio 2019)(Rice, J.), citing *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012) ("(noting that the Sixth Circuit has suggested that, in addition to 'newly discovered; evidence, 'newly presented' evidence constitutes 'new evidence' for purposes of the actual-innocence exception)".). For that reason, neither the Report nor this Supplemental Report offers any analysis of Taylor's diligence in obtaining this newly presented evidence.

of limitations because (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. (Response, ECF No. 20, PageID 1207.)

Taylor conceded in his Memorandum in Opposition that his conviction became final June 25, 2001, and that "sometime before January 2003" he began to seek records to permit him to litigate his claims before he filed a state habeas petition in "mid-2003" (Response, ECF No. 20, PageID 1208). The Report concluded from these admissions that the one-year AEDPA statute of limitations expired before Taylor even began to try to contest his conviction (Report, ECF No. 21, PageID 1272). Once the statute expired, nothing Taylor did reset it. Facts which would support equitable tolling do not support restarting the statute once it has expired.

The Objections again emphasize Taylor's diligence and the difficulties he faced litigating from prison (ECF No. 22, PageID 1294-97). But the Objections confirm the essential facts on which the Report's conclusion rests: the first documented act Taylor took to contest his conviction was a letter to the Wayne County Clerk of Courts seeking records and dated March 1, 2003 (Objections, ECF No. 22, PageID 1295). The Objections even argue that "[a]part from an apparent delay between the finality of his 2001 conviction and the 2003 record requests, Taylor has been consistently litigating his claims for two decades." *Id.* at 1296. But it was during that delay that the statute expired. Vigorous pursuit of relief from a conviction after the statute of limitations expires is immaterial.

**Request for an Evidentiary Hearing**

Taylor was tried three times. While transcripts of the first two trials have been filed, the Report noted that neither party was able to produce a complete copy of the third transcript from

the 1998 trial that ended in conviction and which is the subject of Taylor's habeas petition here. In opposing the Motion to Dismiss, Taylor asserted the incompleteness of the record entitled him to an evidentiary hearing. The Report questioned what kind of hearing it was that Taylor believed he was entitled to, but ultimately concluded that issue was not germane to the statute of limitations question now before the Court.

The Objections clarify Taylor's request: he wants an evidentiary hearing "where he can show why the evidence of improper police tactics applies particularly to his case." (ECF No. 22, PageID 1298). This request is completely conclusory. Taylor does not begin to suggest what additional evidence he would offer to tie up his general evidence about false confessions with his own case. He has already presented the facts about his arrest and interrogation in the transcript of the suppression hearing. If he has any more substantial evidence of his psychiatric diagnosis, there is no good reason why it could not have been presented heretofore.

The Magistrate Judge agrees with Petitioner that there could be occasions when an evidentiary hearing would be warranted in an effort to prove the actual innocence gateway. For example, a trial judge would often want to hear live testimony from a supposedly reliable eyewitness who had been discovered only after trial in order to decide if the witness was in fact reliable. In such a case, however, presumably the facts that the new witness was prepared to testify to would be first presented by affidavit or an attorney summary. Nothing like that is offered here. For example, does Taylor have a psychiatrist who is prepared to do an evaluation and provide a current diagnosis, then project that diagnosis back to 1996 and opine that it resulted in a false confession? If so, Taylor has not disclosed the availability of any such witness. Indeed, he has not suggested any witnesses he would call at an evidentiary hearing. Nor has he suggested why the absence of a complete record of the third trial is what would make an evidentiary hearing

useful.

**Conclusion**

Having reconsidered the case in light of the Objections, the Magistrate Judge again respectfully recommends the case be dismissed as barred by the statute of limitations. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

June 18, 2020.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #