IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROY D. TAYLOR,

    Petitioner,

v.

KEVIN LINDSEY,

    Respondent.

Case No. 19-12256

VISITING JUDGE WALTER H. RICE

VISITING MAGISTRATE JUDGE
MICHAEL R. MERZ

---

DECISION AND ENTRY ADOPTING UNITED STATES MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #21) AND
SUPPLEMENTAL REPORT AND RECOMMENDATIONS (DOC. #25);
OVERRULING PETITIONER'S OBJECTIONS THERETO (DOCS. ##22,
26); SUSTAINING RESPONDENT'S MOTION TO DISMISS (DOC.
#13); DISMISSING PETITION FOR WRIT OF HABEAS CORPUS WITH
PREJUDICE; DENYING CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL *IN FORMA PAUPERIS*; JUDGMENT TO ENTER
IN FAVOR OF RESPONDENT AND AGAINST PETITIONER;
TERMINATION ENTRY

---

I.

In April of 1998, Petitioner Roy D. Taylor was convicted of first-degree felony murder, armed robbery and possession of a firearm during the commission of a felony. This was his third trial; the first two trials resulted in hung juries. On the murder conviction, Petitioner was sentenced to life in prison without eligibility for parole. He was sentenced to a concurrent term of 25-40 years on the armed robbery conviction, plus an additional two years on the firearm conviction. His armed robbery conviction was vacated on appeal; however, his convictions for

felony murder and the felony firearm offense were affirmed by the Michigan Court of Appeals on June 30, 2000. *People v. Taylor*, No. 213412, 2000 WL 33417336 (Mich. Ct. App. June 30, 2000). On March 27, 2001, the Supreme Court of Michigan denied his application for leave to appeal. *People v. Taylor*, 624 N.W.2d 195 (Mich. 2001) (unpublished table decision). His conviction became final ninety days later, on June 25, 2001. In 2015, Taylor unsuccessfully pursued a motion for relief from judgment, and, in 2017, he unsuccessfully pursued a delayed application for leave to appeal.

Taylor filed a petition for habeas relief on July 29, 2019. On December 9, 2019, Respondent filed a Motion to Dismiss the Petition as time-barred, Doc. #13. Petitioner filed a response, arguing that there is new evidence of his actual innocence, that he is entitled to statutory and/or equitable tolling of the statute of limitations, and that an evidentiary hearing is needed. Doc. #20. The case was assigned to the undersigned judge, who referred it to United States Magistrate Judge Michael R. Merz.

II.

This matter is currently before the Court on Respondent's Motion to Dismiss the petition as time-barred, Doc. #13. Respondent argues that: (1) Petitioner is not entitled to *statutory tolling* under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(2), given that his state court collateral attack was filed after AEDPA's one-year statute of limitations expired; (2)

2

Petitioner is not entitled to *equitable tolling* under *Holland v. Florida*, 560 U.S. 631 (2010), because he did not diligently pursue his rights and has not shown that extraordinary circumstances stood in his way of filing his petition in a timely manner; and (3) Petitioner has not satisfied the requirements for a claim of *actual innocence* under *McQuiggin v. Perkins*, 569 U.S. 383 (2013), and *Schlup v. Delo*, 513 U.S. 298 (1995).

Petitioner does not deny that there is no legal basis for statutory tolling. He argues, however, that that he has satisfied the requirements for equitable tolling. He also argues that he has new evidence of his actual innocence, which is sufficient to satisfy the *Schlup* standard. In addition, he argues that an evidentiary hearing is necessary on his claim of unlawful arrest, and is further warranted because there is no trial transcript available. Doc. #20.

On May 9, 2020, Magistrate Judge Merz issued a Report and Recommendations, Doc. #21. Therein, he rejected Petitioner's claims of actual innocence and equitable tolling, and rejected Petitioner's request for an evidentiary hearing. He recommended that the Court sustain Respondent's Motion to Dismiss the petition as time-barred, and deny a certificate of appealability and leave to appeal *in forma pauperis.*

Petitioner filed timely Objections to the Report and Recommendations, Doc. #22, and Respondent filed a Reply, Doc. #24. The undersigned then recommitted the matter to Magistrate Judge Merz for reconsideration in light of the Objections, Doc. #24. On June 18, 2020, Magistrate Judge Merz issued a Supplemental

3

Report and Recommendations, Doc. #25, again recommending that the petition be dismissed as time barred. Petitioner has filed timely Objections to the Supplemental Report and Recommendations, Doc. #26.

The district court must conduct a *de novo* review of those portions of the Reports and Recommendations to which proper Objections have been filed. Fed. R. Civ. P. 72(b)(3).

### III.

Petitioner maintains that the Supplemental Report and Recommendations fails to cure the three errors identified in his Objections to the original Report and Recommendations. For the reasons set forth below, the Court overrules Petitioner's Objections to those judicial filings.

#### A. Equitable Tolling

It is undisputed that the Petition for Writ of Habeas Corpus was filed outside of AEDPA's one-year statute of limitations as set forth in 28 U.S.C. § 2244(d)(1). In fact, it was filed *seventeen years* after the statute of limitations expired on June 26, 2002. Petitioner argues, however, that equitable tolling applies. In *Holland v. Florida*, 560 U.S. 631, 649 (2010), the Supreme Court explained that equitable tolling applies only when the petitioner demonstrates that: (1) he has diligently pursued his rights; and (2) that "some extraordinary circumstance" stood in the way to prevent timely filing.

4

Magistrate Judge Merz noted that, by Petitioner's own admission, he did absolutely nothing to protect his rights until January of 2003, when he first sought records related to his case. This was eighteen months after his conviction became final and six months after AEDPA's one-year statute of limitations expired. Accordingly, it cannot be said that Petitioner diligently pursued his rights.

Petitioner argues that Magistrate Judge Merz failed to consider "the realities of the prison system when assessing a petitioner's diligence in filing an appeal." *Moore v. United States*, 438 F. App'x 445, 450 (6th Cir. 2011). Petitioner notes that he was proceeding without the assistance of counsel or an investigator. However, as Magistrate Judge Merz noted, the Sixth Circuit has held that, even in combination with a petitioner's *pro se* status and limited law library access, a lack of access to trial transcripts is not sufficient to warrant equitable tolling where the petitioner does not act diligently to protect his rights. *Hall v. Warden*, 662 F.3d 745, 751-52 (6th Cir. 2011). Petitioner also cites various delays at the state court level after he filed his state habeas petition in 2003. He does nothing, however, to explain his failure to do *anything* to protect his rights for the first 18 months after his conviction became final.

Given Petitioner's lack of diligence, and the Sixth Circuit's admonition that "equitable tolling should be granted sparingly," *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006), the Court OVERRULES Petitioner's Objections to this portion of the Reports and Recommendations. Magistrate Judge Merz properly

5

concluded that Petitioner is not entitled to equitable tolling of the statute of limitations.

## B. Actual Innocence

A petitioner may also overcome a statute-of-limitations problem if he can make a credible showing of "actual innocence." *McQuiggin v. Perkins*, 569 U.S. 392 (2013). To do so, he must show that, "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

In support of his claim of actual innocence, Petitioner cites to: (1) newly-discovered evidence of the Detroit Police Department's pattern and practice, at the time of his arrest, of making "dragnet" arrests without probable cause and eliciting coerced confessions, which he claims "fits the pattern" in his case; (2) new psychological studies allegedly showing a strong likelihood that his confession was false; and (3) a 2008 initial screening report indicating that Petitioner has a personality disorder, which he claims, according to recent psychological literature, makes him more susceptible to making a false confession.

In his Report and Recommendations, Doc. #21, Magistrate Judge Merz noted that this evidence was "new" in the sense that it came into existence after Petitioner's 1998 conviction. However, other than the one medical record, none of it relates specifically to Petitioner, and none of it purports to prove that Petitioner did not actually commit the murder in question.

6

The evidence of a pattern of misconduct by the Detroit Police Department, which resulted in two consent judgments, makes no reference to Petitioner or his specific case. The psychological studies indicating that innocent people sometimes falsely confess to crimes because of psychological pressure placed on them during police interrogations have little bearing on the question of whether *Petitioner's* confession was, in fact, false. Finally, although Petitioner was diagnosed in 2008 with Axis II personality disorder not otherwise specified (NOS), it is not clear that the psychological literature he cites, indicating that people with "personality disorder" are more susceptible to making false confessions, applies to his specific diagnosis, or that he had any personality disorder at the time of the alleged confession.

Magistrate Judge Merz concluded that "generic" evidence concerning false confessions cannot constitute "new evidence of actual innocence" sufficient to satisfy the *Schlup* standard. *See also Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005) (quoting *Schlup*, 513 U.S. at 324) (explaining that such evidence may consist of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"). He further noted that Petitioner has cited no case in which such generic evidence has been found sufficient to prove actual innocence.

Petitioner objected, Doc. #22, claiming that Magistrate Judge Merz read the *Schlup* standard too narrowly and erred by analyzing these new pieces of evidence in isolation. Petitioner notes that he was interrogated for nearly nine hours before he gave the alleged confession, and that he recanted that confession

within weeks. He points to several factual errors, internal inconsistencies and use of equivocal language in his written statement, all signs of a false confession.

Petitioner claims that, during his first two trials, which resulted in hung juries, the jurors apparently did not believe his alleged confession. According to Petitioner, this fact, combined with evidence that his confession was obtained under circumstances that fit an unconstitutional pattern and practice of dragnet arrests and coerced confessions, evidence that psychological pressure placed on suspects by police often results in false confessions, and evidence that Petitioner was diagnosed with a personality disorder, making him more susceptible to giving a false confession, is sufficient to convince a reasonable juror of his innocence. At the very least, he claims that it warrants an evidentiary hearing on the question of his actual innocence.

In his Supplemental Report and Recommendations, Doc. #25, Magistrate Judge Merz acknowledged that the new evidence is relevant to Petitioner's claim of actual innocence, but again concluded that it fell below the high standard set forth in *Schlup* and *Souter*. He noted that Petitioner had no new trustworthy eyewitness accounts of the crime and no new physical evidence. Moreover, the new scientific evidence that he presented "does not purport to prove that he did not commit the crime, as for example, new forensic evidence might." Doc. #25, PageID#1316. Magistrate Judge Merz again pointed out that Petitioner cited to no cases in which general evidence of this type was found sufficient to demonstrate a credible claim of actual innocence.

8

As to Petitioner's claim that individuals with personality disorders are predisposed to making false confessions, Magistrate Judge Merz noted that the Diagnostic and Statistical Manual lists twelve different types of personality disorders, and the sources cited by Petitioner do not specify which type or types are likely to lead to false confessions. He concluded that this, combined with the cursory diagnosis made twelve years after Petitioner's alleged confession, was insufficient to support a finding that, based on the new evidence presented, no rational juror would have found Petitioner guilty.

In his Objections to the Supplemental Report and Recommendations, Petitioner again argues that the Magistrate Judge erred in finding that the new evidence does not satisfy the *Schlup* standard. However, he makes no new arguments and cites no new authority to support his position.

Citing *House v. Bell*, 547 U.S. 518, 538 (2006), Petitioner further argues that the Magistrate Judge erred by treating the actual-innocence standard as if it requires "absolute certainty" about Petitioner's innocence. Petitioner points out that the actual innocence standard is not as strict as the insufficient evidence standard outlined in *Jackson v. Virginia*, 443 U.S. 307 (1979).

Magistrate Judge Merz, however, did cite the correct standard: "To establish actual innocence, 'a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' *Schlup v. Delo*, 513 U.S. 298, 327 (1995)." Doc. #25, PageID#1316. Moreover, although Petitioner disagrees with the Magistrate Judge's conclusion

9

as to whether this standard has been met, he points to no place in the Supplemental Report and Recommendations where the Magistrate Judge applied a stricter standard when analyzing Petitioner's claims.

Finally, Petitioner argues that the Magistrate Judge erred by dismissing the new evidence of Petitioner's personality-disorder diagnosis, which allegedly rendered him susceptible to false confessions. He claims that Magistrate Judge Merz overlooked his argument that the Department of Justice's investigation into the Detroit Police Department revealed that, at the time of Petitioner's arrest, the police were failing to conduct proper mental health screenings of detainees. He maintains that a proper screening at that time may have revealed that he had a personality disorder. He argues that, at the very least, an evidentiary hearing is warranted to further develop facts about his mental state at the time of his alleged confession.

The Court disagrees. Petitioner has presented no evidence to support a finding that he suffered from a personality disorder at the time of his confession.[1] The fact that he was diagnosed with a personality disorder (NOS) twelve years later is not enough to support a finding that no rational juror, considering the evidence of his diagnosis in light of the new psychological studies, would have voted to convict him.

---

[1] Petitioner argues, without citing any authority, that an officer's testimony that Petitioner was "talkative" and "acting silly" during the interrogation supports a finding that he was mentally ill even then. However, Petitioner's behavior could be attributed to any number of factors, including simple nervousness.

10

For the reasons cited above, the Court OVERRULES Petitioner's Objections to this portion of the Reports and Recommendations. Magistrate Judge Merz properly concluded that Petitioner's new evidence is insufficient to satisfy the *Schlup* standard for actual innocence.

### C. Evidentiary hearing

It is undisputed that there is no trial transcript available of Petitioner's third trial. Citing *Register v. Thaler*, 681 F.3d 623 (5th Cir. 2012), and *Dalton v. Battaglia*, 402 F.3d 729 (7th Cir. 2005), Petitioner argues that, because he bears no fault for the absence of a factual record, an evidentiary hearing is warranted.

In his Report and Recommendations, Magistrate Judge Merz rejected this argument, noting that the absence of a trial transcript is largely irrelevant to the statute-of-limitations issue. He also questioned what form such a hearing would take, and whether Petitioner was seeking the equivalent of a *retrial* in state or federal court. In his Objections, Petitioner clarified that he seeks only to elicit evidence of improper police tactics to support his claim of actual innocence.

In the Supplemental Report and Recommendations, Magistrate Judge Merz again rejected Petitioner's request for an evidentiary hearing. He noted that Petitioner has still not identified any additional evidence *specific to his case* that would help establish his claim of actual innocence and that is not already in the record.

In his Objections to the Supplemental Report and Recommendations, Petitioner claims that the Magistrate Judge erred by failing to address the

11

holdings in *Register* and *Dalton* with respect to the need for an evidentiary hearing. Petitioner again argues that he has presented sufficient evidence of his actual innocence to warrant briefing on the merits of his claims. "However, if the Court has specific concerns, like the concern about Taylor's mental health at the time of the offense, then the correct approach is to order an evidentiary hearing and request that those specific issues be addressed." Doc. #26, PageID#1333.

The Court OVERRULES Petitioner's Objections concerning the need for an evidentiary hearing in this case. Petitioner's reliance on *Register* and *Dalton* is misplaced. In *Register*, the district court granted habeas relief *solely* because there was no trial transcript available. The appellate court vacated the decision and remanded the case. It noted that, although the lack of a trial transcript and other critical portions of the state court record placed the district court in a difficult position, the district court was nevertheless obligated to attempt to recreate the record and conduct a meaningful review of the merits of petitioner's claims. *Register*, 681 F.3d at 627. "As an initial step, the district court should determine whether Register has made a preliminary showing that further factual development of his claims might be fruitful." *Id.* (internal quotation omitted).

In *Dalton*, the petitioner argued that, because he was unaware that he would be eligible for an extended sentence, his plea was not knowing and voluntary. As in *Register*, the state court record was no longer available. The Seventh Circuit held that an evidentiary hearing would be warranted if Dalton "demonstrated that such a hearing might be fruitful." *Dalton*, 402 F.3d at 734. A

12

statement in a state court order referred to the prosecutor's recollection that petitioner had been advised of the possibility of an extended sentence. However, Petitioner submitted two affidavits that seemed to indicate otherwise. Under these circumstances, the court held that an evidentiary hearing was necessary to resolve this genuine issue of material fact. *Id.* at 734-35.

*Register* and *Dalton* were both directed to the effect of the lack of a trial transcript on the *merits* of the petitioners' habeas claims. In contrast, the question in Taylor's case is whether he has submitted sufficient new evidence of his actual innocence to overcome the statute-of-limitations issue. He maintains that, based on the new evidence he has presented concerning his allegedly false confession, no reasonable juror would have found him guilty beyond a reasonable doubt.

However, in contrast to *Register* and *Dalton*, where the absence of a trial transcript clearly impeded the court's ability to analyze the merits of the petitioners' claims, the absence of a trial transcript does not necessarily impede the Court's ability to decide whether Petitioner has satisfied the *Schlup* "actual innocence" standard to overcome the statute of limitations problem. As Respondent has pointed out, evidence of misconduct by the Detroit Police Department and the new psychological research cited by Petitioner is extrinsic evidence that does not rely on the trial court record.

Moreover, Petitioner has failed to demonstrate why an evidentiary hearing would be "fruitful." As Magistrate Judge Merz noted, the transcript of the suppression hearing, which is part of the record in this case, contains facts about

13

Petitioner's arrest and interrogation, and Petitioner has offered no additional evidence in that respect. In addition, it does not appear that Petitioner has a psychiatrist willing to testify that he suffered from a personality disorder at the time he made the confession. Given that there appears to be no unresolved *factual* dispute relevant to Petitioner's claim of actual innocence, the Court finds that an evidentiary hearing would not be fruitful. Magistrate Judge Merz properly found that no such hearing is warranted.

## IV.

Based on the reasoning and citations set forth in the Magistrate Judge's Report and Recommendations, Doc. #21, and Supplemental Report and Recommendations, Doc. #25, the Court ADOPTS said judicial filings and OVERRULES Petitioner's Objections thereto, Docs. #22, 26.

The Court SUSTAINS Respondent's Motion to Dismiss the Petition for Writ of Habeas Corpus, Doc. #13, and DISMISSES the Petition WITH PREJUDICE.

Given that Petitioner has not made a substantial showing of the denial of a constitutional right and, further, that the Court's decision herein would not be debatable among reasonable jurists, and because any appeal from this Court's decision would be *objectively* frivolous, Petitioner is denied a certificate of appealability, and is denied leave to appeal *in forma pauperis*.

Judgment will be entered in favor of Respondent and against Petitioner.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Eastern District of Michigan, Southern Division.

Date: November 16, 2021

*[signature]*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE